NATOMAS COMPANY, Plaintiff,

v.

Richard BRYAN, Attorney General of the State of Nevada, Calvin R. S. Dunlap, District Attorney of Washoe County, and Magma Power Company, Defendants.

No. CIV–R–81–78–ECR.

United States District Court, D. Nevada.

April 8, 1981.

Lionel Sawyer & Collins by Richard W. Horton and Charles M. McCrea, Jr., Reno, Nev., for plaintiff.

Clark J. Guild, Jr., Guild, Hagen & Clark, Reno, Nev., for Magma Power Co.

## ORDER

EDWARD C. REED, Jr., District Judge.

In this action the plaintiff has asked for a declaratory judgment that the Nevada Takeover Bid Disclosure law, NRS 78.376–78.3778, is unconstitutional on its face and as applied to the plaintiff, because it violates the Supremacy Clause and the Commerce Clause of the U. S. Constitution. The plaintiff contends that the Williams Act amendments, 15 U.S.C. §§ 78m(d)–(e) and 78n(d)–(f), to the Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq.*, have preempted the field of takeover bids. Of more immediate attention is the demand of the plaintiff for a preliminary injunction restraining the defendants from invoking or enforcing the said Nevada law against the plaintiff in connection with its tender offer for common stock of defendant Magma Power Company. The Court, on March 27, 1981, issued a temporary restraining order against the defendants. The order was extended, on April 1, 1981, until April 11, 1981, or further order of the Court, whichever first occurred.

A hearing on the motion for preliminary injunction was held on April 6, 1981, the plaintiff being represented by Richard W. Horton, Esq., and Charles H. McRea, Jr., Esq., of Lionel Sawyer & Collins, and defendant Magma Power Company by Clark J. Guild, Jr., Esq., of Guild, Hagen & Clark.

The plaintiff, on March 27, 1981, announced its intention to commence a cash tender offer for any and all shares of the common stock of defendant Magma Power Company. The price of $42.00 per share was substantially above the then current market price of the stock. An important reason for the issuance of the temporary restraining order was the plaintiff's argument that it was impossible to comply with both the Williams Act and the Nevada law. The reasons were and are as follows:

(1) The State law, NRS 78.3771, requires that an informative statement be filed with the resident agent of the target corporation (Magma) at least thirty days prior to the making of a takeover bid. On the other hand, the federal law, 17 C.F.R. § 240.14d–2(b) requires that disclosure of the tender offer be disseminated within five business days of its first public announcement.

(2) Nevada law, NRS 78.3772, permits the deposit of shares in response to a takeover bid in not less than ten days nor more than thirty-five days from the date of first invitation to deposit shares. The Williams Act, at 15 U.S.C. § 78n(d)(5), however, permits withdrawal of shares any time after sixty days from the date of first invitation. Also, 17 C.F.R. § 240.-14e–1(b) permits an increase in the tender price provided that the tender offer remains open for at least ten business days from the date of notice of the increase in price. In addition, a tender offer may have to be extended beyond thirty-five days in order to obtain approval of a regulatory agency.

Congress, in the Securities Exchange Act of 1934, did not expressly bar the states from regulating tender offers. *Leroy v. Great Western United Corp.*, 443 U.S. 173, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979). Nevertheless, when the state regulation interferes with the federal purpose or operates to impede the implementation of a federal policy, it must yield. *Cantwell v. County of San Mateo*, 631 F.2d 631 (9th Cir. 1980). In determining whether such conflict exists, the inquiry is to the application of the laws, rather than their literal wording. *Mite Corp. v. Dixon*, 633 F.2d 486 (7th Cir. 1980), *Edgar v. Mite Corp.*, —— U.S. ——, 101 S.Ct. 2043, 68 L.Ed.2d 347.

■ The dominant theme of the Williams Act is to protect investors (the stockholders of the target corporation) by allowing both the offeror and the management of the target corporation to present their respective arguments to the investors, so that the latter may decide for themselves whether to accept the tender offer. *Id.; Piper v. Chris-Craft Industries*, 430 U.S. 1, 97 S.Ct. 926, 51 L.Ed.2d 124 (1977). In seeking to attain that objective, Congress sought to strike a neutral balance between the offeror and the target management. *Gateway Industries v. Agency Rent A Car*, 495 F.Supp. 92 (N.D.Ill.1980). It repeatedly rejected proposals for prenotification requirements, as an obstacle to the desired neutrality. *Mite Corp. v. Dixon, supra.* Thus, the thirty-day notice requirement of Nevada law is in conflict with the Williams Act. *See AMCA Intern. Corp. v. Krouse*, 482 F.Supp. 929 (S.D.Ohio 1979); *Mite Corp. v. Dixon, supra.* One reason is that the interests of the target corporation's management at the time of a tender offer are likely to be adverse to those of the shareholders. *Id.* The extra time given to management under a state prenotification law sometimes is used to arrange a defensive merger, enter into restrictive loan agreements, increase dividends, abolish cumulative voting, or enter into long-term contracts between the corporation and themselves.

■ The Nevada Takeover Bid Disclosure law may significantly affect transactions to be executed outside the State's boundaries. Thus, it may disrupt commerce. The amount of the tender offer (hundreds of millions of dollars are involved in the instant takeover bid) would be kept out of interstate commerce should the extra time allowed by State law enable the target company's management to induce its stockholders to turn down the takeover bid. There would be no countervailing local benefit, therefore the conflicting State legislation is in conflict with the Commerce Clause. *See Mite Corp. v. Dixon, supra; cf. AMCA Intern. Corp. v. Krouse, supra.*

■ Where a takeover bid is contested, a showing of irreparable harm to the investors is essential before injunctive relief may be granted. *Klaus v. Hi-Shear Corporation*, 528 F.2d 225 (9th Cir. 1975). If the management of the target corporation succeeded in defeating the takeover bid, by use of a defensive tactic, all investors would lose their opportunity to obtain a premium price for their stock. The delay caused by the Nevada law, standing alone, is significant in determining irreparable injury. *See Mite Corp. v. Dixon, supra.*

■ The Court having concluded that a showing of irreparable injury has been made, and having also concluded that the Nevada law violates both the Supremacy and Commerce Clauses, it is clear that the plaintiff has at least a fair chance of success on the merits and that the balance of hardships tips decidedly in its favor. *See Benda v. Grand Lodge of International Association of Machinists*, 584 F.2d 308 (9th Cir. 1978). The Nevada law is unconstitutional on its face as applied to the plaintiff.

IT IS, THEREFORE, HEREBY ORDERED that defendants Richard Bryan, Calvin R. X. Dunlap and Magma Power Company, and their agents, servants, employees and attorneys, as well as all persons in active concert or participation with them, are hereby preliminarily enjoined from attempting to enforce or seeking enforcement of NRS 78.3771 and/or NRS 78.3772 against the plaintiff herein in connection with said plaintiff's takeover bid for Magma Power Company's common stock.

IT IS FURTHER ORDERED that as a condition to the effectiveness of this preliminary injunction, the plaintiff shall continue its bond in the sum of $10,000.00 for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained.

IT IS FURTHER ORDERED that this preliminary injunction shall expire upon the entry of final judgment in this action unless it is extended for good cause shown for a longer period, or the defendants consent to such an extension.

194

IT IS FURTHER ORDERED that the foregoing be deemed to constitute the findings of fact and conclusions of law required by Fed.R.Civ.P. 52.