BATUS, INC., a corporation; Batus Financial Services Inc., a corporation, Plaintiffs,

v.

Brian McKAY, Attorney General of the State of Nevada; Mills Lane, District Attorney of Washoe County; Farmers Group, Inc., a corporation, Defendants.

No. CV–N–88–118–HDM.

United States District Court, D. Nevada.

March 30, 1988.

**638**

Larry R. Hicks, Alvin J. Hicks, Reno, Nev., Hugh Steven Wilson, Karen R. Leviton, Juli Wilson Marshall, Los Angeles, Cal., Robert S. Rifkind, Robert D. Joffe, New York City, Rory O. Millson, Marc W. Rappel, Irene Livadopoulos, Los Angeles, Cal., for plaintiffs.

Dean J. Kitchens and Gail E. Lees, Robert Fairbank, Los Angeles, Cal., Casey W. Vlautin, Reno, Nev., J. Kenneth Creighton, Deputy Atty. Gen., Carson City, Nev., R. Edward Dannan, Asst. Dist. Atty., Reno, Nev., for defendants.

### ORDER

McKIBBEN, District Judge.

The plaintiffs, Batus, Inc. and Batus Financial Services, Inc. (Batus), filed a complaint for declaratory and injunctive relief seeking to prohibit the defendants, Farmers Group, Inc. (Farmers) and Brian McKay, Attorney General of the State of Nevada, and Mills Lane, Washoe County District Attorney (the State), from enforcing certain provisions of the Nevada statutes governing takeover bids (hereinafter referred to as the Nevada Takeover Act), Nev.Rev.Stat. § 78.376 through 78.3778. Among other arguments Batus contends (1) Farmers is an "issuing" corporation under Nev.Rev.Stat. § 78.3788 and therefore Nevada's Takeover Act does not apply to the Batus tender offer and (2) the sixty-day limit on tender offers contained in Nev. Rev.Stat. § 78.3772(1) is unconstitutional as applied to Batus because it violates the Supremacy Clause and Commerce Clause of the United States Constitution.

Batus commenced a tender offer for all shares of common stock of Farmers at a price of $63 per share which was substantially higher than the then current market price of Farmers' stock. The tender offer was contingent on Batus obtaining the necessary approval of various state insurance regulatory authorities which regulate the insurance activities of Farmers. Hearings on the Batus application for approval have in some instances been set for periods beyond the sixty-day limitation of Nev.Rev. Stat. § 78.3772(1) and Farmers has requested further delays in such hearings.

The threshold inquiry for the court is whether Farmers is an "offeree" corporation within the meaning of Nev.Rev.Stat. § 78.3765. If it is, the Nevada Takeover Act would apply to the Batus tender offer. If instead Farmers is an "issuing" corporation, the Takeover Act would not apply since Nev.Rev.Stat. § 78.377 defines a "takeover bid" as an offer to purchase the shares of an "offeree corporation." Under Nev.Rev.Stat. § 78.3765 an "offeree corporation" is a "corporation incorporated under the law of Nevada, other than an issuing corporation as defined in NRS 78.3788, whose shares are the subject of a takeover bid." Under Nev.Rev.Stat. § 78.3788 an "issuing" corporation is defined as a corporation, organized in Nevada, which:

1. Has 200 or more shareholders, at least 100 of whom, as indicated by the stock ledger of the corporation, are residents of this state; and

2. Does business in this state directly or through an affiliated corporation.

Farmers contends it does not have 100 or more stockholders, as indicated by the stock ledger of the corporation, who are residents of the State of Nevada. Farmers maintains its corporate stock ledger identifies forty-nine or fifty stockholders *of record* who are residents of Nevada. In addition to these stockholders, Farmers concedes there are other individual residents of the State of Nevada who are beneficial owners of Farmers' shares which are held by various employee benefit, pension and other ownership pools or plans (Exhibit I). Farmers does not dispute the contention of Batus that if these additional shareholder lists are included for computation purposes under Nev.Rev.Stat. § 78.3788, the number of resident shareholders would exceed one hundred. Instead Farmers asserts the statute does not permit consideration of these additional resident shareholders. The court does not agree.

While the term "stock ledger" in Nev. Rev.Stat. § 78.3788 has not been expressly defined by the legislature, the intent behind the statute is to include all stockhold-

ers of the corporation. Nev.Rev.Stat. § 78.105 refers to a stock ledger as a ledger which contains the names of all persons who are stockholders of the corporation. It cannot reasonably be argued that a stockholder list does not include beneficial owners or employee shareholders participating in various employee stock option plans of Farmers.

Finally, and most persuasively, Batus asserts the legislative history of Nev.Rev. Stat. § 78.3788 indicates its terms should be broadly construed. This statutory provision appears to have been adopted in response to *CTS Corp. v. Dynamics Corp. of America,* ─── U.S. ───, 107 S.Ct. 1637, 95 L.Ed.2d 67 (1987). In *CTS Corp.,* the United States Supreme Court upheld the constitutionality of a control share acquisition act, recognizing the state's interest in regulating the internal affairs of a domestic corporation which has a substantial number of resident shareholders. Accordingly, the focus is on the presence or absence of Nevada shareholders.

Therefore, the court concludes the legislature intended a broad interpretation of "stock ledger" to include beneficial owners and employee shareholders participating in employee stock option plans for computation purposes under Nev.Rev.Stat. § 78.3788. In addition, contrary to the position taken by the State here, a corporation's status as an "issuing" corporation does not depend on whether it has elected to "opt out" of the protection of the Nevada statutes governing the acquisition of controlling interest, Nev.Rev.Stat. § 78.378 through 78.3793. The legislature did not so provide. Should this constitute a defect in the statute it must be cured by legislative, not judicial, action. Thus the court finds Batus is likely to succeed in its efforts to show Farmers is an "issuing" corporation within the meaning of Nev.Rev. Stat. § 78.3788 and is therefore exempt from the Nevada Takeover Act.

While the court has found that Farmers is likely to be found an "issuing" corporation, and therefore the Nevada Takeover Act would not apply to Batus' tender offer, the court will address the constitutional issues raised in connection with the sixty-day limit on tender offers contained in Nev. Rev.Stat. § 78.3772(1).

■ Nevada law, Nev.Rev.Stat. § 78.3772(1), provides in pertinent part:

1. The period of time within which shares may be deposited pursuant to a takeover bid must be not less than 10 days nor more than 60 days from the date of the first invitation to deposit shares.

Batus contends, under the facts of this case, the provision that shareholders may not deposit shares pursuant to a takeover bid later than 60 days from the date of the first invitation to deposit shares is preempted by the Williams Act, 82 Stat. 454, as amended 15 U.S.C. §§ 78m(d)–(e) and 78n(d)–(f) (1982 ed. and Supp. III). The court agrees.

The principal objective of the Williams Act is to protect investors. In enacting the Williams Act Congress did not prohibit states from regulating takeovers. *Edgar v. Mite Corp.,* 457 U.S. 624, 631, 102 S.Ct. 2629, 2635, 73 L.Ed.2d 269 (1982). However, a state law is invalid to the extent it conflicts with a federal statute. Such a conflict may exist where a state's "law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941). The court concludes that while it may not be impossible to simultaneously comply with the provisions of the Williams Act and the Nevada Takeover Act, the 60–day limit in Nev.Rev.Stat. § 78.3772(1) in the context of this case frustrates the objectives of the Williams Act in a substantial way.

Here Batus launched its tender offer on March 3, 1988. The offer expires on March 30, 1988 and Batus has represented it will extend the offer. Under Nev.Rev.Stat. § 78.3772(1) the offer may not be extended beyond May 2, 1988.

Batus is required to secure regulatory approvals before consummating the tender offer. This process was properly commenced at the time the tender offer was made. It is clear from the record that

regulatory approvals in this case cannot be obtained within the sixty-day period. The Williams Act was designed to permit shareholders to deposit and withdraw shares while the tender offer is open. There is no limit on how long an offer may remain open under the Williams Act and a shareholder may withdraw shares at any time. 17 C.F.R. § 240.14d–7. The Williams Act does not fix any maximum duration for a tender offer but provides in section 14(d)(5) of the Exchange Act, 15 U.S.C. § 78n(d)(5), that where an offer is open for more than sixty days shareholders may withdraw shares which have been deposited but not yet purchased. Under the Williams Act, Congress sought to forge a neutral balance between the offeror and the target company. Where regulatory approvals must be secured there is a substantial incentive for the management of a target company to oppose regulatory approval and delay the process beyond sixty days after which new shares may not be deposited but deposited shares may continue to be withdrawn. There is an indication in the record here that such delaying actions may already have been taken by Farmers. The investors ultimately suffer because they are required to deposit shares within the sixty-day period without complete information on regulatory approvals. Thus the sixty-day limitation severely erodes the neutral balance afforded under the Williams Act to the offeror to the ultimate detriment of the shareholder. And, it does so without any apparent benefit to the shareholder. Neither party was able to advance any beneficial purpose for the limitation period and both parties acknowledge no other state has imposed such a time limitation for tender offers. An examination of the legislative history of Nev.Rev.Stat. § 78.3772(1) discloses no substantive policy reason, which is of benefit to the shareholder, for the sixty-day limitation imposed on offerors by the statute.

The SEC rules promulgated under the Williams Act require offerors to keep offers open for at least ten additional business days following an announced increase or decrease in the tender offer price. Rule 14e–1(b), 17 C.F.R. § 240.14e–1(b). There-

fore the offeror could not comply with both the federal law and Nev.Rev.Stat. § 78.3772(1) if it attempted to modify the price for the shares after the fiftieth day.

Because the sixty-day provision of Nev. Rev.Stat. § 78.3772(1) frustrates the objective of neutrality under the Williams Act in a substantial way, the court concludes it is in conflict with the Supremacy Clause.

■ The court also concludes the sixty-day limitation in the Nevada Takeover Act may substantially affect the free flow of interstate commerce. A tender offer such as the one here which requires substantial time for securing regulatory approval can effectively be thwarted by a target company securing delays for regulatory approvals beyond the sixty-day period. Tender offers such as the Batus offer involving millions of dollars would be kept out of commerce. While the effect on interstate commerce is great the court perceives no substantial state interest to be protected by preserving the sixty-day limitation. It does not protect resident shareholders for they may withdraw their shares at any time and are protected by the Williams Act. The sixty-day limitation of Nev.Rev.Stat. § 78.3772(1) severely inhibits an unsolicited nationwide tender offer for the securities of a Nevada corporation whose business is subject to regulations and approvals of regulatory agencies.

Therefore, the court concludes Batus has shown a strong likelihood of success on the merits of its claim that Farmers is an "issuing" corporation and therefore the Nevada Takeover Act does not apply and that in any event the sixty-day limitation of Nev. Rev.Stat. § 78.3772(1) violates both the Supremacy and the Commerce Clauses.

■ The court also finds Batus has shown irreparable harm to the investors which must be established before injunctive relief may be granted where a takeover bid is contested. *Klaus v. Hi–Shear Corp.,* 528 F.2d 225 (9th Cir.1975). If Farmers can delay the regulatory approvals beyond the sixty-day limit, investors will be disinclined to deposit their shares and may lose an opportunity to obtain a premium

price. This is sufficient to establish irreparable injury. *Natomas Co. v. Bryan*, 512 F.Supp. 191, 193 (D.Nev.1981).

The court finds these issues dispositive on Batus' request for injunctive relief and will therefore not address other issues raised in the application for preliminary injunction.

It is therefore ORDERED that Batus' motion for preliminary injunction is GRANTED and the defendants and their agents, attorneys, servants, and employees are hereby enjoined from enforcing or seeking to enforce the provisions of Nev. Rev.Stat. § 78.3772(1) against Batus in relation to Batus' cash tender offer for Farmers' shares.

It is further ORDERED that Batus shall deposit a bond in the amount of $15,000 in accordance with Fed.R.Civ.P. 65(c) as a condition of the effectiveness of this order.

It is further ORDERED this preliminary injunction shall remain in force and effect until a final judgment is entered in this action or until further order of this court.